UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORP. , <br><br> Plaintiff(s), <br><br> v. <br><br> JUDY LAUN, et al., <br><br> Defendant(s). | Case No. 2:14-cv-01085-JCM-VCF <br><br> ORDER |

Presently before the court is defendants Judy Laun and Amnet, Inc. d.b.a. American Insurance Network's motion for summary judgment. (Doc. #23). Plaintiff American Alternative Insurance Corp. ("AAIC") filed an opposition in response to the motion. (Doc. #29). Defendants filed a reply to the response. (Doc. #33).

**I.      Background**

Plaintiff AAIC has asserted a single cause of action for equitable subrogation concerning the settlement recovery in a lawsuit concerning a car accident in a Nevada Eighth Judicial District Court case, *Cione v. Yoshida*, case no. A-11-651827. (Doc. # 23 at 3). Plaintiff in the accident case, Arthur Yoshida, had a primary insurance policy from Colorado Casualty Insurance Company ("CCIC") with a limit of $250,000 per incident. Mr. Yoshida was also insured under a personal and business owner's umbrella policy with a limit of $1,000,000 issued by plaintiff AAIC. The AAIC policy covered accident liability beyond the limits of the CCIC primary policy. Plaintiff asserts that various offers to resolve the *Cione* matter within the limits of Yoshida's primary police with CCIC were presented, but that Yoshida rejected those offers.

Yoshida notified CCIC of the accident the day after it occurred on August 26, 2011. AAIC, the excess insurance provider, alleges that it was not on notice that the accident occurred, triggering its potential liability, until May 2013, when defense counsel for Mr. Yoshida notified AAIC. (Doc.

**James C. Mahan**
**U.S. District Judge**

# 1 at 3-4). Before counsel notified AAIC, Yoshida rejected multiple offers to settle the action within his primary insurance limits.

On June 26, 2012, a settlement offer for $250,000 was tendered to Yoshida. The settlement was coupled with a medical evaluation report outlining $1,068,327.50 in future medical costs of the injured parties. (Doc. #29-4). It was refused. (Doc. #1 at 4). On July 24, 2012, a formal offer of judgment for $250,000 was served on Yoshida. (Doc. #29-5). This was also rejected. These offers occurred before AAIC had notice of its potential liability.

Plaintiff argues that it was thus precluded from acting upon these opportunities and avoiding liability. Yoshida's counsel also failed to offer an expert opinion on medical costs prior to the deadline for identifying such witnesses. Plaintiff argues that it had no opportunity to monitor Yoshida's defense attorney and that his failure to offer expert testimony resulted in a higher settlement. (*Id.*).

Mediation occurred on July 16, 2013. AAIC participated in the mediation, and a settlement of $900,000 was agreed upon with CCIC paying $250,000 and AAIC paying $650,000. (Doc. ## 29-10, 1 at 4-5). Plaintiff argues that if it had been notified of the *Cione* lawsuit that it would have had the opportunity to accept earlier offers and that the "excess policy would never have been implicated." (Doc. #1 at 5). AAIC asserts that it involuntarily paid the $650,000 allotted judgment amount; it thereafter brought this action for equitable subrogation. (*Id.*).

Plaintiff argues that defendants' status as "AAIC's insured's broker meant that defendants owed fiduciary duties to the insured[,] and defendants "breached this duty when they failed to notify AAIC of the above accident and the subsequent suit, which exposed AAIC's insured to a judgment in excess of his primary policy limits of $250,000." (Doc. #1 at 5). AAIC contends that the lack of notice of the lawsuit "robbed AAIC of the ability to participate in opportunities to settle the underlying matter within the primary policy limits. AAIC would have had zero exposure had the insured settled within his primary policy limits." (Doc. #1 at 6). This lack of notice also allegedly "denied [plaintiff] crucial opportunities to defend on liability because its insured stipulated to liability before AAIC was notified." (*Id.*).

## II.     Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant

**James C. Mahan
U.S. District Judge**

- 2 -

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby,*

**James C. Mahan**
**U.S. District Judge**

*Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

Nevada case law regarding equitable subrogation in the insurance context is lacking. In these situations, the Ninth Circuit has looked to how the Nevada courts interpret the lack of case law and "[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance. In accordance with this practice, we have looked to the law of other states when necessary to supplement Nevada's law on equitable subrogation." *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996) (citing, *e.g.*, *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269, 1281–82 (1995); *Dutt v. Kremp*, 111 Nev. 567, 894 P.2d 354, 358 (1995)).

In looking to California's law, "[e]quitable subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to 'step into the shoes' of the loser and pursue recovery from the responsible wrongdoer." *Fireman's Fund Ins. Co. v. Maryland Casualty Co.,* 21 Cal. App. 4th 1586, 1595-1596, 26 Cal. Rptr. 2d 762 (1994) (quoting *Self-Insurers' Security Fund v. ESIS, Inc.* 204 Cal. App. 3d 1148, 1155, 251 Cal. Rptr. 693 (1988)). "In the insurance context, the doctrine permits the paying insurer to be placed in the shoes of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid." *Id.* (quoting *Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co.*, 59 Cal. App. 3d 860, 864, 31 Cal. Rptr. 211 (1976).

This court similarly looks to California, which outlines a conjunctive test requiring six elements for equitable subrogation in the insurance context:

> (1) The insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer;
>
> (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable;
>
> (3) the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer;
>
> (4) the insurer has suffered damages caused by the act or omission upon which the liability of the party to be charged depends;

> (5) justice requires that the loss should be entirely shifted from the insurer to the party to be charged, whose equitable position is inferior to that of the insurer; and
>
> (6) the insurer's damages are in a stated sum, usually the amount it has paid to its insured, assuming the payment was not voluntary and was reasonable.

*E.g.*, *Troost v. Estate of DeBoer*, 155 Cal. App. 3d 289, 294, 202 Cal. Rptr. 47 (1984); *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 21 Cal. App. 4th 1586, 26, Cal. Rptr. 2d 762 (1994); *Dobas v. Vitas*, 191 Cal. App. 4th 1442, 1449–1450 (2011) (quoting *Patent Scaffolding Co. v. William Simpson Const. Co.* 256 Cal. App. 2d 506, 509, 64 Cal. Rptr. 187(1967)).

Here, defendants have successfully demonstrated that the AAIC has failed to make a showing sufficient to establish an element essential to its cause of action for equitable subrogation. *See Celotex,* 477 U.S. at 323–24. Specifically, to establish a claim for equitable subrogation, AAIC must establish, amongst other things, that "[t]he insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer."

AAIC argues that defendants, as the insured's agents and brokers, owed a fiduciary duty to the insured to put both of his insurers on notice that his accident may have implicated their policies. It alleges that defendants' failure to put AAIC on notice, as the issuer of Yoshida's excess policy, resulted in a settlement that was $650,000 higher than the settlement that would have resulted if AAIC had notice of the negotiations between CCIC, Yoshida, and the plaintiffs from the state court case.

In order to sustain that argument, AAIC must show that defendants owed such a fiduciary duty to Yoshida as a matter of law. It cannot do so. Defendants cite to two Nevada cases—*Flaherty v. Kelly* and *Keddie v. Beneficial Ins., Inc.*—for the proposition that the *only* duty a broker or agent owes its client is to use reasonable care in procuring the requested insurance. *See* 2013 WL 7155078, at *2 (Nev. Dec. 18, 2013); 94 Nev. 418, 420 (Nev. 1978). The court agrees with AAIC that neither *Flaherty* nor *Keddie* expressly hold that a broker owes no duties to the insured beyond procuring the requested policies. *See id*. The cases do not address any duty owed once policies have been placed, but focus instead on the broker's legal responsibilities with respect to placing the insurance. *Id.*

AAIC fails, furthermore, to cite support from Nevada, California, or other jurisdictions that an insured's agent or broker *does* owe the insured any duties once the insurance contracts requested have been issued. For an equitable subrogation claim, the burden to establish that defendants are

**James C. Mahan**
**U.S. District Judge**

- 5 -

"legally responsible to the insured for the loss caused" by showing that defendants owed the insured some affirmative duty with respect to notifying its insurers of a loss is on the plaintiff. *See, e.g.*, *Troost*, 155 Cal. App. 3d at 294. AAIC cannot carry that burden.

It argues that some jurisdictions have held that "[a]n expanded agency agreement, arrangement, or relationship, sufficient to require a greater duty from the agent than the general duty generally exists when the agent holds himself out as an insurance, specialist, consultant, or counselor." *Wilson v. James L. Cooney Ins. Agency*, 845 N.E.2d 1187, 1193 n. 13 (2006). AAIC alleges that when Yoshida notified defendant Judy Laun about the accident, she told him that "she would take care of it." Plaintiff argues that by making such an assurance, Laun, and Amnet by extension, "may have assumed a higher duty and a fiduciary relationship may be found to exist." (Doc. # 29 at 11) Defendants were supposedly then legally obligated to fulfill Yoshida's notice obligations under his insurance contract. (*See id.*)

The court disagrees. First, plaintiff's reliance on *Wilson* is similarly misplaced to defendants' reliance on *Flaherty and Keddie*. *See id.* The *Wilson* court is addressing duties related to the procurement of insurance, not duties that continue beyond placement. *Id.* Second, Laun's assurance that she would "take care of it" is vague and does not rise to the level of "hold[ing] [her]self out as an insurance specialist, consultant, or counselor" such that "[a]n expanded agency agreement, arrangement, or relationship" exists under *Wilson*. *See Wilson*, 845 N.E.2d at n. 13.

Finally, the only evidence plaintiff provides of such an assurance is Yoshida's representation in a letter addressed to AAIC's reinsurer that Ms. Laun said she would "take care of it." Plaintiff has not offered a deposition, declaration, or affidavit from Mr. Yoshida authenticating the letter. Moreover, the letter constitutes inadmissible hearsay that does not fall within an exception. *See* FED. R. EVID. 802, 803.

AAIC has therefore provided no legal or evidentiary support for the assertion that Ms. Laun or Amnet owed any affirmative or fiduciary duty to Yoshida that would create a legal responsibility sufficient to establish liability under an equitable subrogation claim. Plaintiff has not cited to any support that establishes such a duty and has failed to offer evidence in support of its attenuated "expanded agency agreement" argument under *Wilson*. See 845 N.E.2d at n. 13.

### IV. Conclusion

Defendants have demonstrated that plaintiff AAIC failed to make a showing sufficient to establish an essential element of its claim for equitable subrogation. *See Celotex,* 477 U.S. at

James C. Mahan
U.S. District Judge

- 6 -

323–24. Plaintiff has failed to carry its burden of establishing that a genuine issue of material fact exists with respect to that element. *See Matsushita*, 475 U.S. at 586. Summary judgment in defendants' favor with respect to AAIC's single claim for equitable subrogation is therefore appropriate.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Judy Laun and Amnet, Inc.'s motion for summary judgment (doc. #23) be, and the same hereby, is GRANTED.

IT IS FURTHER ORDERED that defendants Judy Laun and Amnet, Inc. shall submit an appropriate judgment consistent with this order.

DATED March 17, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**